JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ANDREW R. PERRONG
1657 The Fairway, Jenkintown, PA 19046

**(b)** County of Residence of First Listed Plaintiff    MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

ANDREW R. PERRONG (PRO SE)
1657 The Fairway, Jenkintown, PA 19046

## DEFENDANTS

Cardo Windows Inc d/b/a Castle Windows
109 GAITHER DR STE 309 MOUNT LAUREL, NJ 08054

County of Residence of First Listed Defendant    BURLINGTON
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

◻ 1   U.S. Government
     Plaintiff

☒ 3   Federal Question
     *(U.S. Government Not a Party)*

◻ 2   U.S. Government
     Defendant

◻ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ◻ 1 | Incorporated *or* Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure | ◻ 422 Appeal 28 USC 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - |    of Property 21 USC 881 | ◻ 423 Withdrawal | ◻ 376 Qui Tam (31 USC |
| ◻ 130 Miller Act | ◻ 315 Airplane Product |    Product Liability | ◻ 690 Other |    28 USC 157 |    3729(a)) |
| ◻ 140 Negotiable Instrument |    Liability | ◻ 367 Health Care/ | | | ◻ 400 State Reapportionment |
| ◻ 150 Recovery of Overpayment | ◻ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ◻ 410 Antitrust |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ◻ 820 Copyrights | ◻ 430 Banks and Banking |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' |    Product Liability | | ◻ 830 Patent | ◻ 450 Commerce |
| ◻ 152 Recovery of Defaulted |    Liability | ◻ 368 Asbestos Personal | | ◻ 835 Patent - Abbreviated | ◻ 460 Deportation |
|    Student Loans | ◻ 340 Marine |    Injury Product | |    New Drug Application | ◻ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ◻ 345 Marine Product |    Liability | | ◻ 840 Trademark |    Corrupt Organizations |
| ◻ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ◻ 480 Consumer Credit |
|    of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 370 Other Fraud | ◻ 710 Fair Labor Standards | ◻ 861 HIA (1395ff) | ◻ 490 Cable/Sat TV |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle | ◻ 371 Truth in Lending |    Act | ◻ 862 Black Lung (923) | ◻ 850 Securities/Commodities/ |
| ◻ 190 Other Contract |    Product Liability | ◻ 380 Other Personal | ◻ 720 Labor/Management | ◻ 863 DIWC/DIWW (405(g)) |    Exchange |
| ◻ 195 Contract Product Liability | ◻ 360 Other Personal |    Property Damage |    Relations | ◻ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ◻ 196 Franchise |    Injury | ◻ 385 Property Damage | ◻ 740 Railway Labor Act | ◻ 865 RSI (405(g)) | ◻ 891 Agricultural Acts |
| | ◻ 362 Personal Injury - |    Product Liability | ◻ 751 Family and Medical | | ◻ 893 Environmental Matters |
| |    Medical Malpractice | |    Leave Act | | ◻ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |    Act |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | **Habeas Corpus:** | ◻ 791 Employee Retirement | ◻ 870 Taxes (U.S. Plaintiff | ◻ 896 Arbitration |
| ◻ 220 Foreclosure | ◻ 441 Voting | ◻ 463 Alien Detainee |    Income Security Act |    or Defendant) | ◻ 899 Administrative Procedure |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 510 Motions to Vacate | | ◻ 871 IRS—Third Party |    Act/Review or Appeal of |
| ◻ 240 Torts to Land | ◻ 443 Housing/ |    Sentence | |    26 USC 7609 |    Agency Decision |
| ◻ 245 Tort Product Liability |    Accommodations | ◻ 530 General | | | ◻ 950 Constitutionality of |
| ◻ 290 All Other Real Property | ◻ 445 Amer. w/Disabilities - | ◻ 535 Death Penalty | **IMMIGRATION** | |    State Statutes |
| |    Employment | **Other:** | ◻ 462 Naturalization Application | | |
| | ◻ 446 Amer. w/Disabilities - | ◻ 540 Mandamus & Other | ◻ 465 Other Immigration | | |
| |    Other | ◻ 550 Civil Rights |    Actions | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | | | |
| | | ◻ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
   Proceeding

◻ 2 Removed from
   State Court

◻ 3   Remanded from
     Appellate Court

◻ 4 Reinstated or
   Reopened

◻ 5 Transferred from
   Another District
   *(specify)*

◻ 6 Multidistrict
   Litigation -
   Transfer

◻ 8 Multidistrict
   Litigation -
   Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Telephone Consumer Protection Act, 47 U.S. Code § 227 et seq., and 47 C.F.R. § 64.1200 et seq.

Brief description of cause:
Defendants called Plaintiff on his private telephone in violation of the FTCPA and related claims.

## VII. REQUESTED IN COMPLAINT:

◻ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $
168,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ◻ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
07/02/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Andrew R. Perrong /s/

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY, CAMDEN VICINAGE

| | |
|---|---|
| **ANDREW R. PERRONG**<br>1657 The Fairway #131 Jenkintown, PA 19046 | )<br>)<br>) |
| .<br>**Plaintiff,**<br>**vs.** | )<br>) **Civil Action**<br>) **No.**_____ |
| **CARDO WINDOWS, INC. d/b/a**<br>**CASTLE WINDOWS**<br>**109 GAITHER DR STE 309**<br>**MOUNT LAUREL, NJ 08054,** | )<br>)<br>)<br>) |
| **CHRISTOPHER J. CARDILLO,**<br>**Individually and as Principal of CASTLE,**<br>**255 HARTFORD RD**<br>**MOUNT LAUREL, NJ 08054,** | )<br>)<br>)<br>) |
| **NICHOLAS CARDILLO**<br>**Individually and as Principal of CASTLE,**<br>**33 N RIDING DR**<br>**CHERRY HILL, NJ 08003** | )<br>)<br>)<br>) |
| **and**<br>**DOES 1 through 100, inclusive,** | )<br>) |
| **Defendants.** | ) **Jury Trial Demanded**<br>) |

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution,

reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and

injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64

for the *ultra vires* illegal actions and deliberate and knowing tortious activity of CARDO

WINDOWS, INC. d/b/a CASTLE WINDOWS, ("CASTLE"), CHRISTOPHER J. CARDILLO,

and NICHOLAS CARDILLO Individually and as Principals of CASTLE ("CARDILLO," and

"CARDILLO,"), and Does 1 through 100, inclusive, in negligently and/or willfully contacting

1

Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an automatic telephone dialing system ("ATDS Calls"), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.    **Introduction**

1.  Defendant CARDO WINDOWS, INC. ("CASTLE") is a company located and domestically incorporated in the State of New Jersey. CASTLE does business under the fictitious name Castle Windows and the trade name/slogan "The Window People," and sells windows and other home improvement products to individuals throughout Pennsylvania, New Jersey, and other states in the US. Its principal mailing address and address for service of process is located at 109 Gaither Dr Ste 309 MOUNT LAUREL, NJ 08054.

2.  Plaintiff brings this action to challenge Company's practices in the telephone solicitation of their products and services. Specifically, Plaintiff challenges Company's and Company's agents' illegal telephone solicitations by which they market their products and services, illegal Calls made using an automatic telephone dialing system, and failure to maintain a Do-Not-Call policy or list in connection therewith.

3.  All of the claims asserted herein arise out of Company's illegal telephone solicitation campaign and are a common fact pattern.

## **Jurisdiction and Venue**

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that

Defendants conduct business in New Jersey's Burlington County, which lies within this judicial district and vicinage, pursuant to 28 U.S.C. §118. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District.

## Parties

6. Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private cellular telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

7. Defendant CARDO WINDOWS, INC. ("CASTLE") is a company located and Domestically incorporated in the State of New Jersey. CASTLE does business under the fictitious name Castle Windows and the trade name/slogan "The Window People," and sells windows and other home improvement products to individuals throughout Pennsylvania, New Jersey, and other states in the US. Its principal mailing address and address for service of process is located at 109 Gaither Dr Ste 309 MOUNT LAUREL, NJ 08054.

8. Defendant CHRISTOPHER J. CARDILLO ("CARDILLO") is an adult individual who is the Primary Owner of CASTLE. CARDILLO is an adult individual, and citizen of the United States. As Principal of CASTLE, CARDILLO is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in New Jersey, Pennsylvania, and nationwide.

9. Defendant NICHOLAS CARDILLO ("CARDILLO") is an adult individual who is

3

another Managing Member / Principal, and in charge of regulatory and legal compliance at CASTLE. CARDILLO is an adult individual, and citizen of the United States. As Principal of CASTLE, CARDILLO is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in New Jersey, Pennsylvania, and nationwide.

10. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

11. At all times herein mentioned, CASTLE, CARDILLO, CARDILLO, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

12. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

13. At all times herein mentioned, Defendants conspired by means of mutual

4

understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

14. The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

15. Under the TCPA, an individual such as CARDILLO or CARDILLO may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217, the Communications Act of 1934, as amended, of which the TCPA is a part, which reads, *inter alia*: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" 47 U.S.C. § 217 (emphasis added).

16. When considering individual officer liability, other Courts have agreed that a Corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, e.g., *Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), which stated that "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), stating that "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."

17. Defendants CARDILLO and CARDILLO are personally liable under the

5

"participation theory" of liability because they are the Principal owners and controlling officers of CASTLE, knew of Company's violations, and directed employees and/or agents of Company to continue making those violations. Furthermore, CARDILLO and CARDILLO are personally liable because they are personally responsible for ensuring Company's employees' TCPA compliance. Defendant CHRISTOPHER CARDILLO admits as much in an interview given to Smart CEO Magazine entitled "How Chris Cardillo built one Castle Windows franchise into a South Jersey empire" (http://smartceo.com/how-chris-cardillo-built-one-franchise-into-a-south-jersey-empire/, archived at https://archive.is/Mt6OS), where defendant states, "I kind of *push the envelope* and try to *expand the business* in a more *aggressive way*, and [Nicholas] is more accounting for everything and making sure *everything runs* smoothly *on compliance*." Here, Defendant CHRISTOPHER CARDILLO admits to "push[ing] the envelope" when it comes to expanding the business, which includes by means of illegal telemarketing, and places the onus on his brother, Defendant NICHOLAS CARDILLO, for compliance.

## Factual Allegations

18. In or about March 23rd, 2018, Plaintiff received the first of multiple calls and made using an automatic telephone dialing system ("ATDS") by Defendants and/or their agents to Plaintiff's personal cellular telephone number, 215-208-9484, for which he is charged for the call. Plaintiff had not consented to this solicitation, and Plaintiff's telephone number was on the Federal Do-Not-Call Registry.

19. All calls came from the identical Caller ID 856-235-4441, which is the main telephone number for Castle. Plaintiff notes that this number has been the subject of at least fifty (50) complaints, including to the FTC, 800Notes, and Hiya.

20. As more fully described below, Defendants in this saga made a total of twenty-eight

6

(28) telephone calls to Plaintiff at all times of the day, often multiple times per day, predominantly at the breakfast, lunch, and dinner hours, between March 23 and April 6, a time frame which included both Christian and Jewish holidays.

21. This first call, received at 3:39 PM on March 23rd, bore the Caller ID 908-297-9568, and was answered by Plaintiff. Before Plaintiff even said a word, Plaintiff heard a noise and spoke to an agent of Castle, who wanted to schedule an appointment for an estimate for window replacement.

22. Plaintiff knew that it would not be easy, or potentially impossible, to identify the Caller definitively without feigning interest. Accordingly, Plaintiff provided the caller an e-mail address to receive more information, and was able to confirm the caller was indeed calling from Castle Windows. Nowhere during the call did Plaintiff consent to future telephone calls from Defendants. In fact, Plaintiff stated that he was busy and would call Defendants back if he was interested.

23. Despite sending no signal to be contacted and explicitly saying he would call Defendants if he was interested, thus rejecting unwanted advances of Defendants, Plaintiff was accosted by Defendants a little more than an hour later, at 4:41 PM. Plaintiff rejected the call and sent it to voicemail. Plaintiff did not respond to this call, indicating a desire not to be contacted. Defendants did not leave a message

24. Nevertheless, Plaintiff received another five (5) calls the next day, March 24, at 8:25 AM, 10:13 AM, 11:02 AM, 12:07 PM, and 2:52 PM. Because Plaintiff was busy with other matters, he missed all but the 12:07 PM call that day, which he rejected and sent to voicemail, indicating a desire not to be contacted. Defendants did not leave messages during any of these calls.

7

25. Continuing with their excessive calls, Plaintiff received a call at 10:31 AM on Sunday, March 25, which was missed. Plaintiff, however, texted the number two messages, one saying, "STOP" and the other saying "Stop calling me".

26. Despite this second clear notice not to be contacted, Plaintiff received another four (4) calls on March 26, at 12:58 PM, 1:29 PM, 4:25 PM, and 6:59 PM, all of which were missed. Plaintiff did not respond to these calls, indicating a desire not to be contacted. Defendants did not leave a message.

27. Plaintiff received two calls on the 27th of March. The first call, at 11:54 AM, was missed by Plaintiff. Plaintiff, however, answered a call at 4:01 PM. During this call, he spoke to an agent of Castle, during which Plaintiff said he thought he told Castle to stop calling, and explicitly requested that they stop calling for the third time. Despite this simple request, the agent hung up without saying another word to Plaintiff.

28. Plaintiff received another call on the 28th of March at 10:16 AM, which was missed. Like so many previous calls, Defendants did not leave a message.

29. On Thursday, March 29th, Plaintiff received a call at 2:51 PM, which was missed. Like so many previous calls, Defendants did not leave a message.

30. Defendants made two calls on Good Friday, a NJ State Holiday, the 30th of March, by calling Plaintiff twice to solicit their windows, once at 11:28 AM, which was missed. Plaintiff received a second call that day at 5:06 PM, during which Plaintiff said it was Good Friday and to stop the relentless calling.

31. Despite this, Defendants made a call on Saturday, March 31, at 10:26 AM. This call was missed. Like so many previous calls, Defendants did not leave a message.

32. To make up for a lack of calls on Easter, Defendants called on Easter Monday, April

8

2, three times. The first two calls, at 10:14 AM and 3:47 PM, were missed. The third call, at 5:57, Plaintiff answered. Plaintiff spoke to an agent and again reiterated that he was not interested, but the agent hung up.

33. Despite this being the fifth explicit request not to be contacted, On April 3, at 9:28 AM, plaintiff received a missed call from Castle. Like the others, Defendants did not leave a message.

34. Plaintiff received a further call on April 4 at 12:34 PM, which Plaintiff missed. Defendants did not leave a message.

35. Plaintiff received three (3) calls on April 5, at 12:01 PM, 4:21 PM, and 5:36 PM. All three of these calls were rejected by Plaintiff and sent to voicemail because Plaintiff did not want to have anything more to do with Defendants and figured that blocking the number would cause them to get the message. Defendants did not leave messages despite the calls being rejected/blocked.

36. Despite the call blocking, Defendants attempted another final call boldly and excessively on April 6 at 11:17 AM. Defendants did not leave a message despite the call being rejected/blocked.

37. Plaintiff never asked to be contacted again from Castle and explicitly asked five (5) times not to be called with a willful disregard for Plaintiff's requests and wishes. It is therefore evident that Defendants do not maintain an internal Do-Not-Call list. In addition, when Plaintiff requested not to be contacted, he was blown off. Based on this fact, it is clear that Defendants do not have any Do-Not-Call policies or procedures in place and do not train their agents to abide by this simple requirement of the law. Based on the nature of their illegal activities, Defendants' noncompliance with the law in this regard is unsurprising.

9

38. Plaintiff received the calls on his private cellular telephone, which is, in addition to being a cellular telephone, a telephone for which he is charged for the calls, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

39. Plaintiff alleges, upon information and belief, that Defendants used an Automatic Telephone Dialing System ("ATDS" or "autodialer"), as that term is defined in 47 U.S.C. § 227(a)(1), to place each of the calls in question. These facts of excessive calling, the fact no message was left, the obvious fact that Defendants were calling from some sort of list, delays in speaking with an agent, machine noise, the geographic distance between the Plaintiff and the Defendants, the fact that this call was part of a broad-ranging telemarketing campaign in addition to the volume of calls and the inattention and carelessness with which the calls were placed *en masse* to the Plaintiff without regard for the TCPA or requests not to be contacted, demonstrate that these calls were made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

40. Defendants flaunt and braggadociously trumpet their guerilla tactics and marketing strategy, which clearly violates the TCPA, in a report in the NJBiz Business Journal entitled, "Kings of castle: The Cardillo brothers have built an empire since taking control of family window business" (http://www.njbiz.com/article/20160606/njbiz01/306069983/kings-of-castle-the-cardillo-brothers-have-built-an-empire-since-taking-control-of-family-window-business, archived at https://archive.is/i7leJ). In this article, they braggadociously state that they use "computer software" "handwritten… by our in-house developers" to market and they spend "$100,000 per year on our programming of our system" which Defendants admit is "not normal." Despite Defendants claiming that such automated systems have a "series of checks and balances," they do not appeared to be geared toward legal compliance, but rather are geared

10

toward making sales at whatever cost. Defendants admit to having "a series of math *equations* over dozens of spreadsheets" in order to gain "the maximum amount of business that can be done in a particular market" so that they can "change ad design and frequency, [and] micromanage the buy," which is "mathematics of efficiency." Such a description highlights the fact that Defendants use a variety of automated processes to market, call people, and violate the TCPA.

41. As if this was not enough evidence that Defendants use an ATDS to blast out calls *en masse* to consumers in the area, Defendants brag about their boiler-room operation for calling people and tweaking their automated systems to make them more efficient. They brag that they "set rooms and staff them with call center reps and a manager who tracks all the sales reps' results." They "constantly gather information and manipulate the marketing program" in order to make their illegal telemarketing and calling more effective. All this demonstrates that Defendants, especially the two CARDILLO Defendants, play an active role in marketing so that they can maximize their sales and TCPA violations.

42. Defendants also admit, in the same article, that they do not respect do-not-call requests, placing sales above all else. They write, "reps report back to our room and analytics are run. Everything is outsourced to us *until the job is sold*." Essentially, Defendants here claim that they will not stop calling until they get a sale, bullying their victims into a sale and submission through multiple relentless harassing telephone calls. Furthermore, Defendant CHRISTOPHER CARDILLO is quoted as saying that his brother, Defendant NICHOLAS CARDILLO, "oversees all the compliance, accounting, bookkeeping, legal and assurance," and that Defendant CHRISTOPHER CARDILLO "focus[es] on generating revenue," which echoes the comments made in the Smart CEO Magazine Article previously quoted.

43. Furthermore, Plaintiff intends to rely on an expert witness and discovery to further

11

demonstrate that Defendants used an ATDS to contact Plaintiff in each of the calls in question and to demonstrate that Defendants knowingly and willfully violate the TCPA because of their guerilla marketing tactics. Additionally, Plaintiff notes that the definition of an ATDS is undergoing major regulatory rulemaking as well as new law, which is likely to expand the number of telephone systems and devices that qualify as an ATDS.

44. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone service... or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). As stated immediately above, the calls were placed using an automatic telephone dialing system to Plaintiff's private cellular telephone line, on which he is charged for the call.

45. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

46. Plaintiff was harmed by the calls, even by those that were rejected or missed. He was temporarily deprived of legitimate use of his phone because his phone line was tied up during the ring time, it used up his minutes, storage and voicemail space, it caused a "missed call" notification to appear which needed to be cleared, he wasted energy and stress in answering, blocking, or rejecting calls, they annoyed him during a holidays, his telephone batteries were depleted, he was charged for the calls, and his privacy was improperly invaded. Moreover, the calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. Plaintiff further notes that the TCPA makes it illegal to initiate the call itself, and does not rely on the answer status to make a violation.

12

47. Plaintiff adequately confirmed corporate identity for each and every call so as to establish liability of Defendants, as more fully outlined above.

48. These telephone solicitations constituted a total of six (6) "calls" under the TCPA that were not for emergency purposes.

49. Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" or otherwise to transmit a message or make calls.

50. As a point of fact, to the extent that "consent" was supplied during the calls, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

51. Plaintiff had no prior business relationship with any one, more, or all of Defendants.

52. The telephone Sales Calls therefore violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

## II.   Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

13

53. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

54. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

56. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

57. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

58. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

59. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

60. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C.

14

§ 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory

damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

61.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

62. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

63. As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble

damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47

U.S.C. § 227(c)(5).

64.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

1.  Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

2.  As a result of Defendants' and Defendants' agents negligent violations of 47 CFR

64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation,

pursuant to the implied private cellular right of action.

15

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

3. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

4. As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00

for each and every violation, pursuant to the implied private cellular right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

5. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

6. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR

64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation,

pursuant to the implied private cellular right of action.

## Eighth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

7. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

8. As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00

for each and every violation, pursuant to the implied private cellular right of action.

16

## WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:

### III. Prayer for Relief

On Causes of Action 1-10:

    1. For awards of $500 for each negligent violation as set forth in actions 1-12;

    2. For awards of $1,500 for each knowing/willful violation as set forth in actions 1-12.

    3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: : **$168,000** (Twenty-Eight (28) counts each of: sales call, ATDS call, failure to put Plaintiff's number on Defendants' Do-Not-Call list, and failure to provide Plaintiff a copy of Defendants' Do-Not-Call policy, at $500 per count of each, with treble damages for each.)

    4. Punitive damages to punish Defendants for their willful, illegal, and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

    5. Prejudgment interest at the maximum legal rate;

    6. Costs of suit herein incurred; and

    7. All such other and further relief as the Court deems proper.

### IV. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

17

Dated: **July 2, 2018**

/s/
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com